# Nehi Bottling Company v. Thomas.

(Decided December 19, 1930.)

J. D. MOCQUOT for appellant.

AUBREY HESTER and F. B. MARTIN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

S. H. McNutt (engaged in the bottling business under the trade-name and style of Nehi Bottling Company) seeks by this appeal to reverse a judgment for $875 recovered against him by Charlie Thomas.

On January 17, 1929, Charlie Thomas and John Hamm went into a place of business kept by Charley Rucker in Mayfield, Ky., to get some pop. Thomas called for "Grape," and Rucker took from his ice box a bottle of "Nehi-grape," pulled the crown off of it and gave it to Thomas, who drank something like half of it, then set it down and remarked that it tasted bad.

He and Rucker examined the bottle, and found something in it rolled up in tin foil. Rucker put the substance

back into the bottle, replaced the crown, and set the bottle in the window. Thomas went to a nearby barber's shop, where he became violently ill. Physicians were called who emptied Thomas' stomach by vomiting produced by the administration of a hypodermic and by washing. They procured the bottle of "Nehi-grape," and sent a portion of the contents of it and some of the washings from the stomach of Thomas to the state board of health of Louisville, Ky., with a request that it be examined for poison, particularly for strychnine and arsenic. This was forwarded from Louisville to the Kentucky Public Service Laboratories at Lexington, and in a few days the doctors at Mayfield were advised that no strychnine was found, but that arsenic trioxide was present in the stomach washings to some extent and present in the "Nehi-grape" in quantity. After about a week's treatment at the hospital at Mayfield, Thomas recovered sufficiently to be able to leave. He contends his kidneys and stomach were permanently injured by this poisoning, that his stomach swells, and that sometimes in the morning he can not button his pants around his waist. For this and the resulting impairment of his earning power he sued McNutt for $20,000, with the result stated. Defendant's motion for a new trial was overruled and he appeals, contending that the court erred in giving and refusing instructions.

Rucker testified he got his "Nehi-grape" off of the Nehi truck, when it passed his place. There is no evidence the truck belonged to McNutt, that McNutt had an exclusive agency for Nehi in that section, or any evidence whatever to show the bottle in question had come from McNutt's plant. McNutt admits he had a bottling plant in Mayfield then, but Rucker says he did not know McNutt, had never ordered any Nehi from him or from the plant in Mayfield. All he testifies on the subject is that he got his goods off of the Nehi truck. No one says who owned this truck, who drove it, or whose products were carried on it. Thus the evidence wholly fails to establish any connection between the bottle of poisoned beverage and McNutt's plant. Hence the court should have directed a verdict for McNutt, and upon the next trial the court will do so if the evidence is the same. The evidence shows this arsenic was a powder and was rolled up in a piece of tin foil with the ends folded over, thus making a package which Rucker says was about the size of his finger. A perfunctory inspection would have dis-

covered it. Rucker testifies the bottle was in the same condition when he served it to Thomas that it was when he got it off the wagon, and the evidence of Rucker and other witnesses shows that it was not tampered with thereafter.

The evidence concerning the inspection of the products of McNutt's plant is that he has there a device consisting of a board in which four slots or holes are cut of such size as to receive and fit a bottle, but not large enough to allow the bottle to pass through. After these products have been bottled and crowned, then they are placed on this device four at a time, one resting on each of the four cutholes; lights behind these cutholes so light up and shine through the bottles that the inspector can see through the contents of each bottle and see if there are any foreign substances in it. Thus it is made evident that, if this package of arsenic was in this bottle when it left McNutt's plant, it would have been discovered by such an inspection, and the conclusion is inescapable that no inspection was made worthy of being called an inspection, or that some malevolent person had put the package of arsenic in this bottle after it was inspected at the plant where it was bottled. We know the crowns can be removed from these botles and replaced thereon, for Rucker testified he replaced the crown on this one after Thomas had drunk a portion of the contents.

> "One who puts on the market articles inherently or intrinsically dangerous to life owes the duty of care to all those persons who ought reasonably to have been foreseen as likely to use them." Ky. Ind. Oil Co. v. Schnitzler's Adm'r, 208 Ky. 507, 271 S. W. 570, 573, 39 A. L. R. 979.

In Payton's Adm'r v. Childers' Electric Co., 228 Ky. 44, 14 S. W. (2d) 208, 209, we said this:

> "The general rule is that a contractor, manufacturer, or furnisher of an article is not liable to third parties who have no contractual relation with him for negligence in the construction, manufacture, or sale of such article, but certain exceptions to this general rule are universally recognized. These exceptions are discussed in Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S. W. 1047, 37 L. R. A., (N. S.) 560, Ann. Cas. 1913B, 689, and MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, and all the

leading decisions on the subject are reviewed in the opinions in those cases. One of the exceptions to this general rule is stated thus in Huset v. J. I. Case Threshing Machine Co. (C. C. A.) 120 F. 865, 61 L. R. A. 303:

" 'An act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy, or affect human life, is actionable by third parties who suffer from the negligence.' "

The res ipsa loquitur doctrine applies in this case:

"Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation of defendant, that the accident arose from want of care.' In other words, the doctrine of res ipsa loquitur applied in this case. 'The reason or theory of the doctrine of res ipsa loquitur is based in part upon the consideration that, as the management and control of the agency which produced the injury is, under the circumstances to which the doctrine applies, exclusively vested in defendant, plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possessed the superior knowledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation.' " Quillen v. Skaggs, 233 Ky. 171, 25 S. W. (2d) 33, 34.

McNutt makes this criticism of instruction No. 1.

"It will be seen that Instruction No. 1 simply directed the jury to find for the plaintiff if they believe from the evidence that there was arsenic in the bottle of beverage that was sold and drank by appellee. Under Instruction No. 1, it might have been the cleanest, healthiest and most harmless articles in the world when it left the hands of the

ordinary manufacturer, and through no fault of his thereafter become a dangerous substance by reason of the negligent or criminal act of some third person."

This instruction does not merit this criticism, and a careful reading of it will show that it requires the jury in order to find for Thomas, not only to believe there was arsenic in this bottle, but further that it was in the bottle when defendant furnished it to Rucker, but it did make McNutt an insurer; and, if upon the next trial the plaintiff traces this bottle of Nehi-grape to McNutt's plant, the court will add to and modify this instruction so that it will read:

"The court instructs the jury that if you believe from the evidence that the defendant, Nehi Bottling Co., by S. H. McNutt, Jr., or any agent or employee, sold and delivered a bottle of Nehi beverage to Charles Rucker to be resold or furnished to the public as a beverage and that said Rucker furnished or sold said bottle of Nehi beverage to the plaintiff, Charles Thomas, for beverage purposes, and that said plaintiff drank some of the contents of said bottle; and if you further believe from the evidence that arsenic was in said bottle, and that said arsenic was in said bottle when same was furnished by defendant to said Rucker and when furnished to plaintiff, and that plaintiff was made sick from drinking said beverage and arsenic and suffered and lost time from same, and/or his capacity to earn money was impaired thereby, that he did not know the beverage contained arsenic when he drank same, you will find for the plaintiff and assess damages as indicated in Instruction No. 2, unless you should believe from the evidence that the presence of the arsenic in the bottle was not due to the failure of the Bottling Company to exercise the highest care as long as the beverage was in its possession to prevent its presence, in which latter event, if you so believe, the law is for defendant and you should so find."

An examination of the cases, supra, and others dealing with the question will disclose that there are two lines of cases upon which the right of action by the consumer is upheld against the manufacturer, and which are bottomed upon two distinct theories, the one ex contractu and the other upon tort. The opinions adopting the first

theory permit the action to be maintained upon the theory, which those courts are pleased to designate, of a constructive warranty which is always a contractual obligation. The courts that permit the action to be maintained upon the ground that the manufacturer failed to exercise the requisite degree of care, and was therefore negligent, adopt the tort theory, since there can be no warranty in the absence of a contractual relationship, and there is no such relationship between the consumers and the manufacturer, but which did exist in the case of Fleet v. Hollenkemp, 13 B. Mon. 219, 56 Am. Dec. 563, from this court. To keep our opinion in harmony with the fundamental and basic principles of the law, we have concluded to adopt the tort theory as being the sounder of the two principles upon which the cause of action is permitted, where the purchase is not direct from the manufacturer.

Instruction No. 1, given by the court, necessarily implies a contractual relationship between the parties to this action, and is essentially based upon a warranty by defendant of the wholesomeness of the beverage drank by plaintiff and which he purchased from the retailer, Rucker. It not being in accord with our view of the true legal principle upon which the action is rested, but the addition to that instruction that we have directed to be given makes it conform to the view herein expressed, and imposes upon the manufacturer of such articles the highest degree of care, and also imposes upon him the burden of proving that he exercised such care because of the res ipsa loquitur doctrine which we hold is applicable in such cases where the manufactured article is intended for human consumption.

Thomas contends the instruction as given is correct, and relies on Fleet et al. v. Hollenkemp, 52 Ky. (13 B. Mon.) 219, 56 Am. Dec. 563, but the differences in the facts make that opinion inapplicable. That was a sale direct to the consumer, and was based upon an implied warranty that the stuff sold was wholesome. McNutt's liability to Thomas, if any, must arise because of his negligence under one of the well-known exceptions to the usual rule; on that subject the difference between the liability of the immediate and the remote vendor is discussed and pointed out in Ward v. Great A. & P. Tea Co., 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242; Friend v. Childs Dining Hall Co., 231 Mass 65, 120 N. E. 407, 5 A. L. R. 1100; Crigger v. Coca-Cola Bottling Co., 132

690

Tenn. 545, 179 S. W. 155, L. R. A. 1916B, 877, Ann. Cas. 1917B, 572; Tate v. Maudlin, 157 S. C. 392, 154 S. E. 431, and Minutilla v. Providence Ice Cream Co. (R. I.), 144 A. 884, 63 A. L. R. 334, and notes following those cases.

One who desires to make further study of the question should read 11 R. C. L. p. 1122, sec. 28, and 26 C. J. p. 783 et seq. For the reason indicated, the judgment is reversed.

The whole court sitting.