## Liggett & Myers Tobacco Co. v. Rankin.

(Decided Nov. 18. 1932.)

STOLL, MUIR, TOWNSEND & PARK for appellant.

A. H. BARKER for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

The Liggett & Myers Tobacco Company manufactures a chewing tobacco put up in plugs, known as Star, at its plant in St. Louis. It is there packed in boxes, sealed, and placed on the market. Some of these sealed packages were shipped to the Kroger Grocery & Baking Company, who were conducting a retail store in Pendleton county. The Kroger Grocery & Baking Company opened the package and sold a plug of tobacco out of it to Orie Rankin. The plug was about 3½ inches long, 2 inches wide and half an inch thick. Rankin put the plug of tobacco in his pocket and went on to work as a carpenter. While at work he took the tobacco out of his pocket and bit off the corner of the plug and went to chewing it. In a little while his mouth became very painful. He took the tobacco out of his mouth and discovered in it a portion of a woolly worm, and then, on looking at the remainder of the plug, found a small part of the worm embedded in that. The worm was about the size of a match with many stingers on it. These stingers were dry and firm and had become embedded in his mouth, lips, tongue, and gums. The inside of his mouth looked like a man's face with a week's growth of beard. He went to a doctor who got part of the stingers out, but said he did not have time to get them all out and gave Rankin a pair of tweezers to get some one else to pull them out for him. He and then his sister worked on his mouth trying to get the stingers out, then he went to another doctor. The result of it all was that his mouth became very much inflamed from the poison in the stingers, for some of them when pulled broke off. He suffered much pain and was unable to work for some time. He brought this suit against the Liggett & Myers Tobacco Company to recover for his injury. The issues were made up and proof heard. The jury returned a verdict in his favor for $800, on which the court entered judgment. The defendant appeals and the only question made on the appeal is, that the court should have instructed the jury peremptorily to find for the defendant.

The defendant showed on the trial that the tobacco, before it was manufactured in the plug, passed through the hands of several sets of employees, whose duty it was to remove from the tobacco all foreign substances and were paid for any foreign substance they found in the tobacco, and that, after the tobacco had

been inspected in this way, it was pressed into the plug. There is no question under the evidence that the worm was in the tobacco when the plug was pressed. The stickers were still sticking in the sides of the tobacco in the remainder of the plug, and a part of the worm was still so placed in the plug as to show that it was there when the plug was formed and pressed. It was a wooly worm and literally covered with these stingers; over a hundred of them were in Rankin's mouth. In 26 C. J. 785, sec. 93, the rule is thus stated as to the liability of the manufacturer of foods and beverages:

"Although different in their reasoning, it is generally agreed by the authorities that a manufacturer, packer or bottler of foods or beverages is directly liable to a consumer for an injury caused by the unwholesomeness or the unfitness of such articles, although purchased from a dealer or middleman and not from such manufacturer, bottler or packer."

To the same effect see 11 R. C. L. p. 621; 17 A. L. R. page 695 note; 63 A. L. R. 344, etc.

These rules are also well settled. See Nehi Bottling Company v. Thomas, 236 Ky. 684, 687, 33 S. W. (2d) 701, 702:

"An act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy, or affect human life, is actionable by third parties who suffer from the negligence.' * * *

" 'Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation of defendant, that the accident arose from want of care.' In other words, the doctrine of res ipsa loquitur applied in this case."

See, also, Graham v. John R. Watts, etc., 238 Ky. 96, 36 S. W. (2d) 859.

It is earnestly insisted for appellant that the above

rules apply only to food and drinks and should not apply to chewing tobacco. In Pillars v. R. J. Reynolds Tobacco Co., 117 Miss. 490, 78 So. 365, 336, the plaintiff bought a plug of tobacco which had in it a human toe, and brought an action for damages against the manufacturer. Holding the manufacturer liable for the injury on the ground that the same rule should be applied to chewing tobacco as to a food, the court said:

"If poisons are concealed in food, or in beverages, or in confections or in drugs, death or the impairment of health will be the probable consequence. We know that chewing tobacco is taken into the mouth, that a certain proportion will be absorbed by the mucous membrane of the mouth, and that some, at least, of the juice or pulp will and does find its way into the alimentary canal, there to be digested and ultimately to become a part of the blood. Tobacco may be relatively harmless, but decaying flesh, we are advised, develops poisonous ptomaines, which are certainly dangerous and often fatal. Anything taken into the mouth there to be masticated should be free from those elements which may endanger the life or health of the user."

To the same effect see R. J. Reynolds Tobacco Co. v. Loftin (Miss.) 99 So. 13; Foley v. Liggett & Myers Tobacco Co., 136 Misc. 468, 241 N. Y. S. 233.

In Liggett & Myers Tobacco Co. v. Cannon, 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179, it was held that tobacco is not a food and that the rule in food cases should not be applied to tobacco, but upon a careful consideration of the subject the court concludes that the distinction cannot be maintained.

Chewing tobacco is made to be chewed by persons in the mouth. If it contains poisonous matter, it is no less dangerous to health than like poison in food. The purpose of the rule above stated is to protect human health and life. Things that are dangerous to health when taken in the mouth are no less within the rule than things that are also taken into the stomach. Chewing gum with poisonous matter in it is no less within the rule than candy with like matter in it. The Star tobacco was put up for the purpose of its being placed

in the mouth and chewed by the user. While tobacco is not a food, it acts upon the nerves and the nerves are no less to be considered than the stomach on which the food acts. The juices from the chewing of tobacco do in fact find their way to the stomach, and poison in chewing tobacco is no less dangerous to health than poison in chewing gum or a liquid taken for its effect on the nerves. · Here there was a poisonous worm and the case cannot be distinguished from those where poison was found in other articles manufactured and sold for human consumption. Although chewing tobacco is not a food, it is within the rule which applies to all things manufactured for human consumption which are dangerous to health or life.

The facts shown leave no room for doubt that the worm was in the plug of tobacco when pressed in the defendant's factory. In Ash v. Childs Dining Hall Co., 231 Mass. 86, 120 N. E. 396, 4 A. L. R. 1556, the tack found in the pie was very small, and might have been imbedded in one of the blueberries of which the pie was made and the evidence did not show how or when it got in the pie. That is not this case.

Judgment affirmed.