## DOW DRUG CO v NIEMAN, et

Ohio Appeals, 1st Dist, Hamilton Co

No 4983. Decided Feb 17, 1936

Bert H. Long, Cincinnati, and Milton M. Bloom, Cincinnati, for plaintiff in error.

Leo J. Brumleve, Jr., Cincinnati, for defendant in error, Clem H. Nieman.

Cohen, Mack & Hurtig, Cincinnati, for defendant in error, The S. Frieder & Sons Co.

**OPINION**

By MATTHEWS, J.

The defendant in error, Clem H. Nieman, was the plaintiff in the Court of Common Pleas of Hamilton County and the plaintiff in error, The Dow Drug Company, and the defendant in error, The S. Frieder & Sons Company, were defendants. The Court of Common Pleas entered judgment in favor of Clem H. Nieman against The Dow Drug Company for $800.00, and against him in favor of The S. Frieder & Sons Company for its costs.

The Dow Drug Company filed this proceeding in error to secure a reversal of the judgment against it and Clem H. Nieman, by cross-petition in error, asks the court to

reverse the judgment in favor of The S Frieder & Sons Company.

The Dow Drug Company operated a retail drug store in the city of Cincinnati, at which it sold cigars. It purchased cigars at wholesale from The S. Frieder & Sons Company of the same city. One of the brands sold by the latter company to the former company was the "Tiona." This trade name was printed on the box in which the cigars were delivered and immediately thereunder and on the inside of the box was the legend "Title and design owned by S. Frieder & Sons Company." At the time of delivery to The Dow Drug Company each cigar was wrapped in a cellophane wrapper.

The evidence of The S. Frieder & Sons Company was that it was not the manufacturer of these cigars, that they were manufactured in the Phillipine Islands by The Helena Cigar Company which wrapped, stamped, and packed them and then shipped them to the warehouse of S. Frieder & Sons Company in Chicago, where they were stored until sold by it when they were shipped directly to its customers.

It is undisputed that Nieman purchased four cigars at the store of The Dow Drug Company, took them home with him, and on the same day proceeded to smoke one of them, when it exploded causing substantial physical injury. These cigars were taken from a box of cigars that had been purchased by The Dow Drug Company from The S. Frieder & Sons Company. The evidence shows that the explosion was caused by a fire cracker that was inside the cigar. It is not claimed that there was any express warranty.

Two issues raised as to the regularity of the trial in certain procedural respects will be noticed before considering the substantial issue raised by this proceeding:

(1) In argument and in the brief it was suggested that the defendants were improperly joined and that the court erred in overruling the defendants' objection on that ground. We find that this objection was raised for the first time at the close of the plaintiff's evidence by motion to require the plaintiff to elect. This was too late. Misjoinder is ground for demurrer, when the misjoinder appears on the face of the petition; otherwise, the objection should be made by answer. If not made in either way it is waived. §§11310 and 11311, GC.

(2) The defendant in error, Clem H. Nieman, seeks a reversal of the judgment in favor of The S. Frieder & Sons Company, claiming that the jury failed to return a verdict as to The S. Frieder & Sons Company and that therefore, the issues of fact remain undecided and the court erred in rendering judgment as though such issues had been determined by the jury.

The record shows that the trial court instructed the jury on the subject of the forms of verdicts as follows:—"Forms of verdict will be submitted for your convenience, the first to be used in the event that you find in favor of the plaintiff, against both defendants, reading as follows: * * *"

"The next form of verdict to be used in the event that you find in favor of the plaintiff against the defendant, The S. Frieder & Sons Company, reading: * * *"

In similar language the court instructed the jury with reference to forms furnished in the event it found in favor of the plaintiff against The Dow Drug Company and in the event it found in favor of both defendants.

The jury returned its verdict on the form which it was instructed to use in the event it found in favor of the plaintiff against The Dow Drug Company.

The claim is that under these circumstances it cannot be said that the jury had passed upon the issues between Nieman and The S. Frieder & Sons Company. **Midland Steel Products Co. v Kehoe, 49 Oh Ap, 338, (18 Abs 7)** is the principal reliance for this position. As we view it, that case did not involve that specific question. It is true that no formal verdict had been rendered against one defendant, but whether under the circumstances it could be said that as a matter of law a verdict had been returned, the record does not disclose. The parties and the trial court considered that a verdict had been returned as to both defendants and on the hearing of a motion to set it aside, the court granted the motion and directed a new trial. No judgment was entered. On that state of the record, the defendant prosecuted error claiming that the court had erred in overruling his motions for an instructed verdict at the close of the plaintiff's evidence and at the close of all the evidence. It will be seen that the question was not whether a verdict had been returned but whether error could be prosecuted at that stage. The court recognized this, saying at page 340; that "The serious question appearing upon the record is whether this proceeding in error will lie while the case is still pending in the Court of Common Pleas against The Midland Steel Products Company;" and the court held that it would not. In other words, it was the same question that was

finally decided in The Cincinnati Goodwill Industries v Neuerman, 130 Oh St. 334, adversely to the conclusion reached in Midland Steel Products Co. v Kehoe, supra. The statements made in this latter case on the subject under consideration in the case at bar were made in arguendo, did not relate to an issue involved and were therefore obiter dicta.

Likewise in Foos v Teeters, 8 Abs. 735, the same court expressed the same view by way of obiter dictum.

But in Strassner v D'Atri, 44 Oh Ap, 36, (13 Abs 390), the issue was squarely raised and the court came to a contrary conclusion. In that case there were two defendants. The court submitted four forms of verdicts—one for the plaintiff against both defendants, one for the plaintiff against the defendant Harsh, one against the defendant D'Atri, and one for the defendants. The jury returned the verdict that it was to use in the event it found for the plaintiff against Harsh alone. The report does not show what instructions were given by the court as to the use to be made of these forms, but it is seen that the situation bears a strong similarity to that in this case. The court held that the jury had returned a verdict in favor of D'Atri, and speaking of Foos v Teeters, supra, the court at page 39 said:

"It is contrary to the weight of authority. In other jurisdictions this matter has been determined many times, although so far as we know no other court in Ohio has ever passed upon the question and counsel in open court say that a careful search by them fails to find any Ohio authorities, other than the one quoted.

"As stated, however, in many other jurisdictions the matter has been determined adversely to the contention of the plaintiff in error, and the rule has been stated to be that a verdict against but one defendant imports a finding in favor of a co-defendant. This seems to us sound. No other reasonable inference could be drawn from the action of the jury in returning a verdict against one defendant and remaining silent as to the other when the case was properly submitted to the jury upon all the issues presented and the several verdicts were submitted to the jury for its consideration. We think that the trial court in the instant case was right in holding that the matter was res judicata, and sustaining the motion."

The legal effect of the action of a jury depends not alone upon the exact language of the verdict. The circumstances under which the verdict was returned and particularly the charge of the court must be taken into consideration. The great preponderance of the decisions in other jurisdictions is to that effect. In Durst v Southern Ry. Co. et, 159 SE 844, at 848, it is said:

"We think the construction of a verdict should, and can, depend upon, not only the language used by the jury, but other things occurring in the trial may be, and should be, properly regarded in determining what a jury intended to find. In a quite recent case, this court followed the latter suggested course. * * *

"Taking the language in which the verdict was couched in connection with the instructions as to the right of the jury to find against one or both of the defendants, and the instructions as to the forms of the verdict, it is our opinion that the verdict rendered in the first trial clearly indicated the intention of the jury to find against the railway company alone, and to acquit its codefendant, Williams, and to that extent we agree with the view of the appellants."

To the same effect are P. C. C. & St. L. Ry. Co. v Darlington, 129 Ky. 266, 111 SW 360; Wabash R. R. Co. v Keeler, 127 Ill. App. 265; Cox v Ellsworth, 97 Neb. 392, 150 NW 197; James v Evans, 149 Fed. 136.

. We conclude that, in view of the forms of verdicts furnished the jury and the court's instructions as to their use, it must be held that the jury returned a verdict in favor of the defendant The S. Frieder & Sons Company.

(3) One of the questions of substantive law raised relates to the construction of the Uniform Sales Act and particularly to §8395, GC, which, so far as is material here, is:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) When the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

What implied warranty, if any, was made when these cigars were sold? Did this warranty run not only to the immediate vendee but also to a sub-vendee?

It is the contention of Nieman that there was an implied warranty of merchantability made by each defendant and that out of such warranty an obligation on each arose in his favor either in contract or tort or both.

On the other hand, The Dow Drug Company contends that because these cigars were sold in cellophane wrappers, in which they were when it bought them, and it had no opportunity to inspect there was no implied warranty, and both defendants claim that because the cigars were sold under a trade name—"Tiona"—There was no implied warranty as to fitness for any particular purpose, and The S. Frieder & Sons Company contend that in no event did it assume any obligation to the sub vendee.

This section of the Uniform Sales Act (§8395, GC) has been under consideration in several comparatively recent cases.

Probably the leading case is that of Ryan v Progressive Grocery Stores, Inc., 255 N Y. 388, in which the court held as stated in the syllabus that:

"1. An action for breach of warranty to recover for injury to plaintiff from a pin concealed in a loaf of bread purchased at the defendant's grocery, where the bread was asked for by brand and delivered in a sealed package as it had come from the baker, cannot be maintained under subdivision 1 of §96 of the Personal Property Law. (Cons. Laws, ch. 41), providing that where the buyer relies on the seller's judgment to select goods for a particular purpose 'there is an implied warranty that the goods shall be reasonably fit for that purpose.' The transaction shows upon its face that the judgment of the seller was superseded and choice determined by the buyer

"2. The action may be maintained, however, under subdivision 2 which provides that where merchandise is bought by description 'there is an implied warranty that the goods shall be of merchantable quality.' A loaf of bread baked with a pin in it is not of 'merchantable quality' and the dealer is charged by the statute with liability though the buyer selects the bread.

"3. A contention that the only damage recoverable is the difference in value of a good loaf and a bad one cannot be sustained. The dealer had notice from the nature of the transaction that the bread was to be eaten, and is, consequently, liable for the resulting special damage."

Many cases from other jurisdictions are cited and commented upon. These cases support the principal case. Other cases in which the same conclusion has been reached are Ganoung v Reeves, 268 N. Y. S. 325; Foley v Liggett & Myers Tobacco Co., 241 N. Y. S. 233; Bencoe Exporting & Importing Co. v The McGraw Tire & Rubber Co., 212 App. Div. (N. Y.) 136; Raymond Syndicates, Inc. v American Radio & Research Corporation, 263 Mass. 147; Outhwaite v Knowlson Co., 259 Mich. 224; McNeill & Higgins Co. v Czarnikow-Rionda Co., 274 Fed. 397; Sperry Flour Co. v DeMass, 18 Pac. (2d) (Or.) 242; and Gimenez v Great Atlantic & Pacific Tea Co., 264 N. Y. 390. These cases show that no distinction is drawn in the application of this section of the Uniform Sales Act between sales of food and sales of other articles of personal property.

It seems to us that this section of the Uniform Sales Act clearly imposes an implied warranty of merchantability notwithstanding the subject-matter is in a sealed container and under a trade name.

Counsel relies on McMurray v Vaughn's Seed Store, 117 Oh St, 236, as declaring the law to the contrary. Actually that case involved the question of whether a cause of action arising out of a transaction other than the one out of which the plaintiff's cause of action arose was a set-off as pleaded by the defendant. The court held that it was an action in tort and therefore could not be pleaded in an action on contract with which it was not connected. It is true that there appears in the opinion expressions that there is no implied warranty by a dealer who sells articles in the original packages as they come from the manufacturer where the buyer knows there has been no inspection by the dealer. This statement is carried into the syllabus. No reference whatever is made to §8395, GC, and an examination of the briefs filed in the case show that the question was not presented to the court in any way. The Supreme Court has frequently announced

that the expressions in their opinions must be regarded as the opinion of the judge who wrote it, the concurrence of the other members of the court being limited to the law as stated in the syllabus, and that as to the latter it must be limited by the facts, and that "When obiter creeps into a syllabus it must be so recognized and so considered." **Baltimore & Ohio Rd. Co. v Baillie, 112 Oh St, 567; Williamson Heater Co. v Radich et, 128 Oh St, 124.**

We are confronted in this case with what we consider the plain language of the statute on the one hand and this obiter dictum on the other. Under such circumstances, it seems to be our duty to follow the statute. We are supported in our belief in the correctness of our construction of the statute by the decisions in other jurisdictions and by the decision in **Goljatowska v Fred W. Albrecht Co., 17 Abs, 294,** of the Court of Appeals of the 9th District, after the decision in McMurray v Seed Store, supra. In that case (Goljatowska v Albrecht Co.) the court reached the conclusion that the expression on this subject in McMurray v Seed Store was obiter dictum and, therefore, not controlling although, of course, entitled to great weight, and after considering the statute in the light of all the authorities held that it imposed an implied warranty of merchantability, notwithstanding the dealer bought the goods from the manufacturer in a sealed container, under a trade name, and sold them in the same condition without any opportunity for inspection. We reach the same conclusion. See also: **35 Ohio Jur. 879.**

The case was submitted to the jury on the theory that if the plaintiff has proven that he had purchased the cigar from The Dow Drug Company, that it was not of merchantable quality, and he was injured by reason thereof, he was entitled to recover against it. This was the correct theory and there was abundant evidence to sustain the verdict for the plaintiff.

The judgment in the plaintiff's favor against The Dow Drug Company will, therefore, be affirmed.

(4) The trial court made the liability of The S. Frieder & Sons Company turn on whether the cigar sold by it to The Dow Drug Company was reasonably fit for the purpose for which it was purchased or whether The S. Frieder & Sons Company was negligent in failing to properly inspect the cigar that it sold to The Dow Drug Company, knowing it was to be resold to its customers. While there is evidence that

The Helena Cigar Company manufactured this cigar, the evidence disclosed that The S. Frieder & Sons Company marketed it as its own product and it was properly held to such responsibility as might attach to it as the original manufacturer. Whatever negligence there was in the original manufacture must be attributed to it. Thornhill v Carpentor Morton Co., 220 Mass. 393; Burkhardt v Armour Co,. 115 Conn. 249.

That there is a liability upon a negligent manufacturer who sells articles knowing they are intended for resale to sub-purchasers is clear from the trend of modern authorities. The only controversy is as to the basis of the liability, some holding that the implied warranties are made for the benefit of the sub-purchasers and form the basis of liability, and others holding that there must be proof of negligence to impose a liability. **Ward Baking Co. v Trizzino, 27 Oh Ap 475 (6 Abs 229); White Sewing Machine Co. v Feisel, 28 Oh Ap, 153 (6 Abs 137);** MacPherson v Buick Motor Car Co., 215 N. Y. 382; Smith v Peerless Glass Co., 259 N. Y. 292; Stultz v Benson Lumber Co., 49 Pac. (2d) (Cal.) 848; Gimenez v Great Atlantic & Pacific Tea Co., 264 N. Y. 390; 46 Harvard Law Rev. 163 and 49 Id. 493.

In the case at bar there can be no doubt that there was evidence that there was negligence in the manufacture of this cigar. In fact the evidence indicates that it was the intention to make it defective as a cigar by the insertion of a fire-cracker in it. Under such circumstances the case was properly submitted to the jury and as the charge authorized a verdict in favor of the plaintiff on both the theory of implied warranty and negligence, there was no error prejudicial to the plaintiff in the instruction.

It is urged that there is an incongruity in a verdict against one of these defendants and one in favor of the other. If so, it would be no ground for a reversal. There were, however, distinct issues as to each of these defendants requiring different evidence to support them. The Dow Drug Company was the immediate vendor. A cigar might have been substituted in the box while in its possession. The burden was on the plaintiff and we would not be justified in disturbing the verdict under the circumstances disclosed by this record.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.