# Moorman Mfg. Co. v. Harris.

Dec. 13, 1939.

G. D. Milliken, Sr., Green, Wilson & Schmiedeskamp, Stoll, Muir, Townsend & Park and Gayle Mohney for appellant.

Rodes K. Myers for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Moorman Manufacturing Company, a corporation, is appealing from a judgment for $1125 recovered

against it by Buron Harris. Appellee alleged in substance in his petition that he purchased from appellant through its agent and servant a quantity of mineral product to be fed to his dairy cows which was represented by appellant's agent to be pure and harmless; that he fed same to his cows according to instructions given by the agent and representative of appellant; that the feed proved not to be pure and wholesome but was unwholesome, poisonous, dangerous and unfit to be eaten by dairy cows; that by reason thereof his cows were poisoned, made ill and a number of them died.

He sought to recover the value of the cows that died, for loss of milk, sums expended for medicine and veterinary treatment and time lost from his work in caring for the cows after they became ill. The various alleged items of damage aggregated the sum which he recovered. Issues were completed by answer traversing the allegations of the petition. After evidence making up three large volumes was heard the trial resulted in a verdict for appellee upon which the judgment appealed from is predicated.

A number of points have been assigned and argued for reversal but since the judgment must be reversed for reasons presently appearing, and the evidence on another trial, if one is had, may be materially different, we deem it sufficient to discuss only the ground on which the judgment is reversed and the instructions which are called in question and reserve all other questions.

We shall refer only in a general way to such evidence as has a bearing on the question discussed. There is evidence that the feed put up by appellant and some of which was purchased by appellee contained a very small percent of fluorine or calcium fluoride. About three weeks after appellee purchased the feed and put it in a lot where his cows had access to it some of the cows began to show signs of illness and all the cattle that became ill died within six or seven days. Veterinarians who treated the cows detailed the symptoms and the condition revealed by two or three post-mortem examinations. During the time the cows had access to the feed in controversy appellee was also feeding them another food known as Garden Street Feed but he took them away from both feeds when they began to show signs of disorder. He testified that he had fed the Garden Street Feed prior to this time and later after getting

reports furnished by the Agricultural Experiment Station of Kentucky resumed feeding it; that during such prior and subsequent feedings the cattle showed no bad results. There is evidence that during the daytime the cattle were kept in a blue grass pasture about a mile from appellee's place where they had access to pure water. Appellee had a dog which he used in driving the cows to and from the pasture. Something like four weeks before the first disorder appeared among the cattle this dog was attacked with rabies. Veterinarians who treated the cows testified that the amount of fluorine which the evidence showed the feed contained would render it dangerous and unfit for cows. They gave as their opinion that the cows died of autointoxication of the intestines; that the symptoms present while the cows were ill and the condition of the intestines indicated fluorine poisoning. They gave as their opinion that the death of the cows was caused by eating the feed in controversy and further that none of the symptoms present when the cows were ill or the condition revealed by the post-mortem indicated rabies.

On the other hand a number of eminent veterinarians testifying for appellant stated in effect that the fluorine content of the feed did not render it dangerous and further that by experiment larger quantities of this feed than could have been consumed by appellee's cows had been fed to cows and other live stock for a much longer period without any bad results; that millions of pounds of feed had been sold by appellant and fed by farmers and stock raisers in recent years without any complaint. Veterinarians who testified for appellant stated that the symptoms manifested by the cows and testified to by veterinarians and by others who observed them all indicated rabies and gave as their opinion, based on hypothetical questions setting out the facts, that the cattle died of that disease and not of fluorine poisoning.

Appellee sent the Agricultural Experiment Station at Lexington a sample of the feed which he purchased through appellant's representative. Appellee introduced as a witness as if on cross-examination R. E. Patrick, an employee of appellant. During the examination of this witness by counsel for appellee the following question was asked,

"Mr. Patrick, have you complained to the Agriculture Department of the University of Kentucky,

as to its advising against the use of this grofast mineral?"

An objection was interposed to this question by counsel for appellant and after a conference between counsel and the court, out of hearing of the jury, the court sustained the objection. The examination then proceeded in the presence of the jury and counsel for appellee then asked,

"Now, judge, I will ask this one. Mr. Patrick, I will ask you if you have not yourself complained to Dr. J. D. Turner, head of the department of feeding stuffs of the Agriculture Experiment Station of the College of Agriculture of the University of Kentucky on his report that the use of this—grofast mineral products presented a source of danger to cattle who took it?"

Upon objection by counsel for appellee and statement of the ground on which it was based, the court overruled the objections, stating,

"He is asking the witness if this doctor didn't make such statement or if the witness didn't take issue with the Doctor alleging that the Doctor had made such statement * * *. I do not believe it would be immaterial or absolutely collateral. It may be of some probative value and throw some light on the issue as to whether or not this mineral is dangerous to cattle. For that reason, I let it in. You may answer that question, Mr. Patrick."

After some further controversy the witness replied,

"I have objected to some of the opinions of Dr. Turner and Dr. McHargue, of the University." "I will ask you if your complaint did not follow a report consisting of seven pages, entitled 'Fluorine Poisoning from the Use of Mineral Mixtures Containing Rock Phosphate,' by J. S. McHargue and J. D. Turner, Kentucky Agricultural Experiment Station and will ask you to read that and state whether or not you have seen that before."

Objection was interposed to this question by counsel for appellant who indicated that the report would be inadmissible if offered as an original proposition and counsel for appellee said:

"It would not be competent that way: but

where I show this man has had the report and is aware fully of the investigation reported in it and entered into a controversy over it with them. * * *''

Thereupon the court sustained the objection indicating that the finding or opinion of the men at the University could not be introduced. The witness was asked something further about the report and upon objection the jury was again excluded and the matter discussed and after the jury had been recalled to the courtroom, counsel for appellee asked the same witness this question,

"Have you been warned by the University of Kentucky Agricultural Experiment Station that the feeding of this Grofast mineral presents a source of danger?"

An objection to this question was overruled, the court saying:

"Just the fact as to whether or not this man has any knowledge or has any complaint that the Grofast mineral is dangerous to the life of livestock." The witness replied,

"I have received no such warning personally, no."

"Do you know of such warning being issued?" An objection to this question being overruled by the court the witness answered,

"I know they have requested that we not use certain ingredients in the mineral."

"What were those ingredients you were advised not to use, Mr. Patrick?"

A considerable controversy followed objection to this question. The court overruled the objection stating in effect that it was competent to show that it had been brought to the attention of appellant that the feed in controversy was dangerous or there would be any harmful effects from the use of it; that it bore on a question of notice. Counsel for appellee then continued,

"Let me ask this question, judge. Have you or any other person connected with your company, to your knowledge, been notified that Grofast mineral contained any ingredients that made it dangerous to be fed to cattle?"

Objections to this question were overruled and the witness answered,

"That claim has been made but not proven."

"I will ask you if you have been notified by the University of Kentucky Agricultural Experiment Station?"

Over objection of appellant the witness was required to answer and stated,

"Notice was received to that effect, without any proof of it being a fact."

It is first argued by counsel for appellee that since Mr. Patrick was merely an employee of appellant it was error to require him over objection of appellant to testify as if on cross-examination and authorities cited seemingly support that contention, but, be that as it may, authorities cited indicate that a statute or code authorizing a party to examine his adversary as if on cross-examination does not change prevailing rules with respect to competency, relevancy or materiality of the evidence of such witness. See Tucker v. Reil, 51 Ariz. 357, 77 P. (2d) 203.

Our recitation of what occurred during the examination of Mr. Patrick will reveal that appellee was permitted to do by indirection what he could not do directly and get before the jury the purport and effect of a report made by men connected with the Agricultural Experiment Station, which report appellee admitted was incompetent and could not be admitted in evidence. The court apparently admitted this evidence as bearing on the question as to whether the company had notice that the Grofast feed which appellee purchased contained harmful ingredients, but even if it had been competent for that purpose, there was no evidence as to whether the report was made before or after appellee sustained the alleged loss. The evidence of this witness concerning reports and statements by Dr. Turner and others at the Agricultural Experiment Station did not rise above the dignity of mere hearsay. We unhesitatingly conclude and hold that it was incompetent. Keeping in mind that the Experiment Station had been furnished a sample of the Grofast feed to which appellee's cows had access and the conflict in evidence concerning the cause of the illness and death of appellee's cows it is easily understood how this evidence might have been

the controlling factor in determining the jury's verdict. The question, otherwise, was to say the least shrouded in considerable doubt. The interrogation of this witness and the answers he was required to make, the statements of counsel and the court during the colloquy necessarily impressed upon the minds of the jurors that authorities at the Experiment Station had made an analysis of this particular feed and had condemned it as containing ingredients that were poisonous and constituted a source of danger when fed to cattle. The prejudicial nature of this evidence is so apparent as to leave no room for doubt.

The correctness of instruction No. 1 is challenged by appellant on the ground that it instructed the jury that appellant impliedly warranted the fitness and quality of the feed for the purpose for which appellee purchased it, and a number of cases, including Nehi Bottling Co. v. Thomas, 236 Ky. 684, 33 S. W. (2d) 701, and Great Atlantic & Pacific Tea Company v. Eiseman, 259 Ky. 103, 81 S. W. (2d) 900, are cited. But without going into detail concerning the evidence we deem it sufficient to say that authorized representatives of appellant who had authority to and were purporting to act for it in selling the feed to appellee were acting within the scope of their express authority in selling the feed for their superior and it was delivered to the buyer in the original package. We therefore conclude that this ground of attack is wanting in merit and should not be sustained.

However, there is merit in appellant's objections to the instruction on the measure of damages in fixing the amount that might be awarded on various items of alleged damage since the evidence concerning some of these items did not warrant a finding for the amount authorized by the instruction. Notwithstanding the averments of the petition, instructions should not authorize recovery on any item in excess of the damages proven.

For the reasons indicated the judgment is reversed and the cause remanded for a new trial and proceedings consistent with this opinion.