## Martin v. Great Atlantic & Pacific Tea Co.

Jan. 25, 1946.

Zeb A. Stewart for appellant.

William Lewis & Son for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The defendant, the Great Atlantic and Pacific Tea Company, operates a great number of retail grocery stores throughout the country, including this Commonwealth, one of which is located in Corbin, Kentucky.

On April 1, 1944, the appellant, A. L. Martin, as a customer of appellee's retail store in Corbin, purchased from it a sealed package of "chili con carne" to be consumed as food by himself and family. The package was opened by plaintiff after his arrival at his home, and a part of its contents was consumed by his family, including himself. According to the averments of the petition plaintiff and the other consumers of the purchased package became exceedingly nauseated, sustaining some pain, mental anguish and other damaging physical effects. The contents of the package were then emptied and in the bottom of it, as alleged, there was found a part of a leg of a dead rat which poisoned the entire contents and rendered it unwholesome, unfit, dangerous and not suitable for the purpose for which it was bought.

Plaintiff filed this action in the Knox circuit court, the county of his residence, against defendant alleging in more elaborate terms his purchase of the named product, its consumption by him and the members of his family, and the alleged resultant damages to himself personally which he fixed at the sum of $2,500, and for which he prayed judgment against defendant.

Defendant denied in general terms the material averments of the petition, and in other paragraphs it pleaded that it bought the sealed package sold to plaintiff from its manufacturer and wholesaler, Emmart Packing Company, located and operating its packing plant in the city of Louisville, Kentucky; that it bought large quantities of the same article, as so contained in sealed packages, and that if the one sold to plaintiff was contaminated and rendered unfit for human con-

sumption—in the manner and for the cause stated in the petition—it (defendant) possessed no knowledge of such conditions and which could not be discovered by it except by opening the package and examining its contents, but which would destroy its salability to its customers. Before filing its answer defendant filed a general demurrer to plaintiff's petition and without waiving it answer was filed. Plaintiff demurred to the answer—except the paragraph denying in general terms the material allegations of the petition—and without waiving it filed its reply, which was a denial in general terms of the affirmative allegations in the answer. The case was then submitted to the court on the demurrers which each party had filed, and it sustained defendant's demurrer to the petition, with exceptions, and overruled plaintiff's demurrer to the affirmative allegations in the answer with exceptions. It then dismissed plaintiff's petition, to reverse which he prosecutes this appeal.

The entire list of authorities relied on by counsel for defendant, and appellee, in its brief filed in this court is: Peaslee-Gaulbert v. McMath's Adm'r, 148 Ky. 265, 146 S. W. 770, 39 L. R. A., N. S., 465, Ann. Cas. 1913 E, 392; Walden v. Wheeler, 153 Ky. 181, 154 S. W. 1088, 44 L. R. A., N. S., 597; Scruggins v. Jones et al., 207 Ky. 636, 269 S. W. 743; Great Atlantic & Pacific Tea Company v. Eiseman, 259 Ky. 103, 81 S. W. 2d 900; Liggett & Myers Tobacco Company v. Rankin, 246 Ky. 65, 54 S. W. 2d 612, 26 C. J. 785, sec. 93; see also 36 C. J. S., Food, sec. 59; 11 R. C. L. 621; 17 A. L. R. 695, and Nehi Bottling Company v. Thomas, 236 Ky. 684, 33 S. W. 2d 701. In each of those cases that was filed against the retailer by his customer, it was held that the plaintiff could not recover on an implied warranty made by the selling retailer when the defect in the article sought was hidden from him as is true in this case; but it was held that an action for negligence might be maintained against the retailer by his customer for any such defects, when the retailer had an opportunity to inspect the article sold by him, but when it was concealed by being encased in a sealed package by a manufacturer, he, the retailer, had no better opportunity for such inspection, or for the acquisition of knowledge as to any defects than did the purchaser at the retail sale.

The cited text, as well as the class of opinions re-

ferred to, were based upon the law as declared *before* the enactment in 1928 of our Uniform Sales Act, which it is vigorously argued by counsel for appellant prescribed for an implied warranty under certain conditions the pertinent part of which is contained in section 361.150 of KRS and its subsections. The other cases cited by counsel for appellee, i. e. Liggett & Myers Tobacco Company v. Rankin, supra, and Nehi Bottling Company v. Thomas, supra, were filed by the customer of the retailer against the defendants therein, who were wholesalers and manufacturers of the involved article and who had no contractual relations with plaintiff. There are many other domestic cases where the action was one to recover damages from the wholesaler or manufacturer alone, wherein we held that the defendants therein were liable as tort-feasors and, perhaps in some, as warrantors under a general express warranty.

The section of the Uniform Sales Act says in its first subsection that where the buyer either expressly or by implication makes known to the seller the purpose for which the article is required "and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose." Subsection (2) says: "Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." In subsection (3) it is enacted that: "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed." Subsection (4) says: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." The other two subsections of the same section need not be referred to, since they are not applicable under the facts of this case.

The Eiseman case, and the case of R. B. Tyler Co. v. Hampton Cracker Co., supra, 265 Ky. 236, 96 S. W. 2d 593, are the only two domestic cases that we have been able to find wherein the action was filed against the retailer by his customer since the enactment of the Sales Act, supra, seeking the recovery of damages for

defects in the article or product purchased by the customer. In the Eiseman case the purchased article was a dressed chicken which the retailer had an opportunity to inspect. It was not concealed in a closed package depriving him of the opportunity of inspection and we held that liability existed under such facts. The R. B. Tyler Co. case involved the purchase from appellant by the appellee, Hampton Cracker Co.—who was plaintiff in the action—of a named article as well as its trade mark or brand, which was Coral Ridge common brick, and we held that there was no implied warranty under subsection (4) of section 361.150, KRS. The law as it existed before the enactment of the Uniform Sales Act is clearly set forth in Vol. 36 C. J. S., sec. 58 et seq., p. 1103, under the heading of "Food," and which is in accord with all of our cases decided before the enactment of our Uniform Sales Act in 1928.

In the instant case defendant is clearly liable under subsection (1) of our Uniform Sales Act, supra. It was known to defendant (the seller) the particular purpose for which the package of chili con carne was purchased, which was to be consumed as food. It is likewise indisputably apparent that the buyer relied on the seller's skill and judgment as to the suitability of the article purchased as an article to be consumed as food. When so, and the purchase is in sealed packages, the court in the cases of Bonenberger v. Pittsburgh Mercantile Company, 345 Pa. 559, 28 A. 2d 913, 143 A. L. R. 1417; Naumann v. Wehle Brewing Co., 127 Conn. 44, 15 A. 2d 181; Singer v. Zabelin, City Ct., 24 N. Y. S. 2d 962; Bowman v. Woodway Stores, Inc., 258 Ill. App. 307; Dow Drug Co. v. Nieman, 57 Ohio App. 190, 13 N. E. 2d 130; Gimenez v. Great Atlantic & Pacific Tea Co., 264 N. Y. 390, 191 N. E. 27; Swengel v. F. & E. Wholesale Grocery Co., 147 Kan. 555, 77 P. 2d 930; Helms v. General Baking Co., Mo. App., 164 S. W. 2d 150, construed the Uniform Sales Act as creating an implied warranty by the seller, though a retailer, that the purchased article is suitable for the purpose intended, and which is especially so when the transaction involves articles of food.

Such interpretation of the statutes is also approved in annotations appearing in 64 A. L. R. 951; 90 A. L. R. 410, and 135 A. L. R. 1393. See also the case of Griggs Canning Co. v. Norman Josey, 139 Tex. 623, 164 S. W.

2d 835, 142 A. L. R. 1424, and annotations thereto. In some of the cases cited and discussed in the opinions preceding the annotations, as well as in the latter, the courts—in holding that the retailer is liable under an implied warranty, notwithstanding the article sold is concealed in packages—acknowledge that the enacted rule, contained in the statute, is a harsh one, but that it is more consonant with right and justice that the harshness should be visited upon the retailer rather than upon his customer. Especially so in view of the fact that the retailer could remunerate himself by proceeding against the manufacturer or wholesaler from whom he obtained the defective or contaminted article, under an implied warranty (in the absence of an express one) issuing from them to him as purchaser in quantities of the same article. Likewise it is quite possible that the retailer when sued in such circumstances could notify his wholesaler or manufacturer as the seller to him, and call upon them to defend the action, or be bound by whatever judgment might be rendered therein, following the rule in ejectment actions, casualty indemnity insurance and perhaps others.

It therefore follows that the court erred in sustaining the demurrer to appellant's petition, and likewise erred in overruling his demurrer to the affirmative paragraphs of defendant's answer, and in finally dismissing plaintiff's petition, because of which the judgment is reversed with directions to set it aside and for proceedings not inconsistent with this opinion.