**HOUCHENS FOOD MARKET OF BOWLING GREEN, Inc., v. KEITH.**

Court of Appeals of Kentucky.

March 28, 1952.

Bell, Stagner & Orr, Bowling Green, for appellant.

Milliken & Milliken, Bowling Green, for appellee.

CAMMACK, Chief Justice.

This appeal is from a judgment awarding Mrs. Gertrude Keith $500 in damages as the result of her consuming lard which she claimed was contaminated by the presence of a dead rat near the bottom of the can or stand. A stand of lard weighs about 50 pounds. The Houchens Food Market from whom Mrs. Keith bought the lard asks that the judgment be reversed because (1) it was entitled to a peremptory instruction; and (2) the court instructed the jury erroneously.

Houchens Food Market operates on a cash basis. Mrs. Keith was one of its customers. The employees of the Market did not deny that the lard had been sold to Mrs. Keith. Obviously, because of the nature of its business, the Market's witnesses could not give any definite proof as to the time the lard was purchased. When Mrs. Keith made her complaint on the 26th of April, 1950, the manager of the Market, in company with a health officer, saw the rat in the lard stand. The Market was unable to explain how the rat got in the lard. Of course, its testimony showed that it would be next to impossible for any foreign matter to get into a lard can during the process of rendering and canning. The difficulty in the case goes to the time at which the lard was purchased.

Mrs. Keith alleged she purchased the lard on or about March 15, 1950. She and her family began using the lard in the preparation of their meals immediately after it was purchased. She said she became violently ill and was treated by a doctor on March 17th. She was treated at frequent intervals during the Spring and

Summer and was still under the care of a doctor at the time of the trial in October, 1950. There is testimony also that other members of her family became ill with symptoms of nausea and diarrhea similar to those of Mrs. Keith. Mrs. Keith said she was the only person who took lard from the stand and that she found the rat on April 26th when she had used down to within about three inches of the bottom of the stand. Unquestionably, the case was one for the jury under the rule laid down in Martin v. Great Atlantic & Pacific Tea Company, 301 Ky. 429, 192 S.W. 2d 201. In that case a part of the leg of a dead rat was found in a package of chili con carne.

The court based his instructions on the presumption that the lard was purchased on or about March 15th. It is the contention of the appellant that the proof shows the lard was purchased on or about the first of January, 1950. When Mrs. Keith was asked when the lard was purchased, she said, "I just don't remember. It was around somewheres the first of the year." When asked when she became ill, she said it was a very short time after she got the lard. She was first visited by a doctor on March 17th. When Mr. Keith was asked on cross-examination whether the lard was purchased around the first of the year, he said, "Somewheres around the first of the year. I can't tell you just when." When he was asked when Mrs. Keith became ill, he said that he could not remember the date, but it was a few days or a week after the lard was purchased. In response to the question, "Sometime in January you think or the early part of February?" he said, "It might have been sometime in February, I just don't know."

It is the contention of Mrs. Keith that, considering the trial was held in October, the reference to sometime around the first of the year would include March 15th. With this we can not agree. When we consider the testimony of Mr. and Mrs. Keith as to the lard being purchased around the first of the year, along with their testimony as to when Mrs. Keith and other members of the family became ill, it leaves us with the feeling that the court erred in his instruction. Also, the amount of lard used from the can, and the time and period of its consumption, are factors for consideration. It seems to us that the time element could have considerable bearing on the case. It is one thing to say that a person became ill after eating contaminated lard two days after it was purchased and another thing to say the illness did not occur until some two and one-half months after its purchase. Then, too, it seems hardly probable that a family of six persons would consume practically all of a stand of lard within a period of 40 days.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.