CONTINENTAL CASUALTY COMPANY, Inc., Appellant,

v.

BELKNAP HARDWARE & MANUFACTURING COMPANY, Appellee.

Court of Appeals of Kentucky.

June 3, 1955.

Rehearing Denied Sept. 30, 1955.

Mayer, Cooper & Kiel, Stanley B. Mayer, Louisville, for appellant.

Morris & Garlove, Charles W. Morris, Louisville, for appellee.

CAMMACK, Judge.

Willie S. Clark, an employee of the Illinois Central Railroad Company, was injured while at work in Chicago, in September, 1947, when the handle broke on a cant hook which he was using. Thereafter he filed an action for damages against the Railroad in Cook County, Illinois. The Continental Casualty Company, the appellant herein, defended the action for the Railroad as its insurer. In January, 1950, the sum of $8,330 was paid to Clark pursuant to an agreed judgment. The present action was filed in the Jefferson Circuit Court in 1950 by the Continental Casualty Company, as subrogee of the Railroad, to recover that amount from the Belknap Hardware & Manufacturing Company, from whom the Railroad purchased the cant hook which Clark was using when he was injured.

After all the pleadings were filed, the appellee moved for a judgment on the pleadings. The court construed the motion as one for a summary judgment pursuant to CR 56, and entered a judgment in favor of the appellee.

In its first petition the appellant relied upon negligence and breach of an implied warranty in the sale of the cant hook. Upon being required to elect, it chose to prosecute the action on the theory that when the cant hook was sold by the appellee to the Railroad it was defective, unsafe, and imminently dangerous to human life and limb; that the appellee knew or by the exercise of ordinary care should have known that the cant hook was defective, unsafe and dangerous; and that Clark's injuries resulted from the danger-

ous and defective condition of the cant hook.

The appellee stated in its answer that the cant hook was not manufactured by it, but was purchased by it, as a jobber, from the American Logging Tool Company, of Evart, Michigan; that it had no control over the manufacture of the cant hook; and that if the hook was defective, it had no opportunity to inspect it.

In support of its motion for summary judgment, the appellee filed the affidavit of Fred Kimmel, Jr., its Director of Railroad Sales. Kimmel stated that in March, 1946, the Railroad signed and delivered to the appellee its written order for .15 cant hooks (a photostatic copy of the order was filed with the affidavit). He stated also that the specifications given by the Railroad included the direction that the cant hooks were to be shipped directly to the Railroad's agent, B. T. Adams, Paducah, Kentucky, f. o. b. Evart, Michigan; that it was well known to the Railroad's purchasing department that Evart, Michigan, was the town in which the American Logging Tool Company is located; and that, as the goods were shipped from Michigan directly to the Railroad, the appellee would have no opportunity to inspect them. He stated further that, in compliance with the directions of the Railroad, the cant hooks were shipped directly from the factory at Evart, Michigan, to the Railroad's agent in Paducah, Kentucky; the appellee did not manufacture the cant hooks and was precluded from inspecting them; the appellee did not supervise or control the manner in which the cant hooks were made, or direct the quality of wood in the handles; and the appellee did not submit any specifications except those contained in the Railroad's order to it. No counter-affidavit or response to this affidavit was filed by the appellant. However, the affidavit of Gordon Williams, head of the Department of Chemical Engineering, Speed Scientific School, University of Louisville, was filed by the appellant. Williams stated that he examined a cant hook which appeared to be reasonably new and which had been stamped by the American

Logging Tool Company, of Evart, Michigan; the handle, which appeared to be of maple, bore a diagonal break across the shaft which followed the grain of the wood; normally such a handle would be made of hickory or of a straight-grained, high strength wood, of which maple may be satisfactory; the strength of a maple handle would be approximately 25 per cent less than that of a similar hickory handle; and that the diagonal grain of the handle he examined further contributed to the lessening of its strength by some 25 to 40 per cent. It was Williams' opinion that the handle, made and fixed in position as it was, represented an imperfect and improperly constructed unit and thereby became inherently dangerous.

The purpose of summary judgment procedure is to expedite disposition of civil cases and to avoid unnecessary trials where no genuine issues of fact are raised. A summary judgment may be invoked in any case where the record shows that there is no real issue as to any material fact with respect to a particular claim or part thereof or defense thereto. Watts v. Carrs Fork Coal Co., Ky., 275 S.W.2d 431. The party moving for a summary judgment has the burden of establishing that no genuine issue as to any material fact exists and also that he is entitled to judgment as a matter of law. If uncontroverted affidavits which clearly disclose the facts show that a genuine issue does not exist, the opposing party has an obligation to do something more than rely upon the allegations of his pleading. Since the moving party has the burden, he must make a prima facie showing that would entitle him to a summary judgment. The opposing party is then required by counter-affidavit, or otherwise, to show that evidence is available justifying a trial of the issue involved. See Clay, CR, pages 502 and 503. We are of the opinion that the trial court was correct in granting the appellee a summary judgment in this case because the uncontroverted affidavit filed by it shows that it could not be liable for Clark's injury caused by the alleged defect in the cant hook.

■■ 'A vendor of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not subject to liability for harm caused by the dangerous character of the chattel even though he could have discovered it by an inspection or test of the chattel before selling it. Davis v. Glass Coffee Brewer Corporation, 296 Ky. 706, 178 S.W.2d 407; Smith v. American Cystoscope Makers, Inc., 44 Wash.2d 202, 266 P.2d 792; Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635; Ringstad v. I. Magnin & Co., 39 Wash.2d 923, 239 P.2d 848; Sears, Roebuck & Co. v. Marhenke, 9 Cir., 121 F.2d 598; Restatement, Torts, section 402, 1948 Supp. It is also the rule that the seller of an article not inherently dangerous, but which is rendered dangerous by a defect therein, is not liable where he had no knowledge of the defect or danger, and made no false representations to the purchaser. Youtz v. Thompson Tire Co., 46 Cal.App.2d 672, 116 P.2d 636; see also Zesch v. Abrasive Co. of Philadelphia, 353 Mo. 558, 183 S.W.2d 140, 156 A.L.R. 469.

■ It affirmatively appears from the affidavit filed by the appellee and the purchase order sent by the Railroad that it could not have known that one of the cant hooks was in any way defective. It was never afforded an opportunity to inspect the cant hook in question because it never had possession of it. Under these circumstances we think the appellee was not liable for an injury to a worker caused by the alleged dangerous condition of the cant hook.

The cases of Martin v. Great Atlantic. & Pacific Tea Co., 301 Ky. 429, 192 S.W. 2d 201; Snead v. Waite, 306 Ky. 587, 208 S.W.2d 749, and Houchens Food Market of Bowling Green v. Keith, Ky., 247 S.W.2d 521, relied upon by the appellant, are not applicable to the present case. They turned upon a provision of the Uniform Sales Act, KRS 361.150(1). That section provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

There is no showing that the Railroad relied upon the appellee's skill or judgment in selecting the cant hooks. On the contrary, the Railroad's express directions that the cant hooks be shipped directly to its agent shows that it was not relying upon the appellee's skill or judgment in their purchase; and also that the appellee in no event would have an opportunity to inspect them.

Judgment affirmed.