## Snead et al. v. Waite et al.

February 13, 1948.

Sidney B. Neal, Judge.

588

Elmer L. Brown and Zeb A. Stewart for appellants.

Claude E. Smith for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Affirming.

This is an appeal from two judgments against appellants, operators of a barbecue pit, for damages alleged to have been caused by the consumption of tainted meat sold to appellees. The verdicts were for $1,500 and $500, respectively. Appellants' principal grounds for reversal are: (1) They were entitled to a peremptory instruction and the verdicts were contrary to the evidence, and (2) appellants' offered instructions should have been given.

Appellees introduced evidence to prove the following facts: On November 2, 1946, Mr. Waite, about noon, purchased from appellants two pounds of barbecued mutton, which had been prepared for immediate consumption. This particular portion was cut up and wrapped by one of the appellants and taken home by Mr. Waite. It was there immediately eaten with bread by him and his family. Some was left over and was consumed for the evening meal. About 10 o'clock that evening Mr. Waite became violently ill, and the next morning his wife and their two children likewise became violently ill. They were sick at the stomach and suffered from nausea, vomiting, cramping, and diarrhea. A doctor was called, and he administered to the whole family. Subsequently two more doctors rendered services. The illnesses were quite severe and lasted for several days. Mr. Waite eventually ended up in the hospital with double pneumonia.

The three doctors all testified that the ailments apparently resulted from food poisoning. Another woman, who had purchased barbecued mutton on the same day, became ill after eating it.

On the other side of the case, appellant, Mr. Snead,

testified that he had not sold any meat to Mr. Waite on that day, insisting however that he sold some to Mrs. Waite. There was also evidence that the meat was purchased from Armour & Company the day before; that it had been handled in the most sanitary manner; and that a great number of other patrons who had purchased similar meat on that day suffered no ill effects from eating it. There is testimony that Mr. Waite had bought barbecued mutton a week before, and one of appellants' theories is that this meat had been permitted to spoil at the home of the Waites.

We are unable to find any basis in the record for appellants' contention that a peremptory instruction should have been given, or that the verdicts were contrary to the evidence. There is substantial evidence that the meat was purchased on November 2; that its unwholesome condition was not known to appellants; that it was consumed shortly after it was purchased; that the members of the Waite family became violently ill as a result of eating it; and that appellees suffered substantial damages.

The facts in this case are very similar to those in the case of Great Atlantic & Pacific Tea Co. v. Eiseman, 259 Ky. 103, 81 S. W. 2d 900. There the plaintiff had eaten tainted chicken. We upheld a verdict in her favor on the ground that a vendor of food, delivering it in a visible condition to a purchaser for his immediate domestic use, impliedly warrants that it is wholesome, and is liable if the purchaser is injured because of a breach of this warranty.

This principle originated in the common law, and has been incorporated in the Uniform Sales Act. Subsection (1), section 361.150, KRS, provides as follows:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

This section of the statutes has been recently held to cover packaged food. Martin v. Great Atlantic & Pacific Tea Co., 301 Ky. 429, 192 S. W. 2d 201.

Appellees amply proved all of the elements of an implied warranty and damages proximately resulting from its breach. Appellants were not entitled to a peremptory instruction, and the jury's verdict is not contrary to the evidence.

Appellants insist that the Court should have given their tendered Instruction X, which was as follows:

"The court further instructs the jury that in considering the evidence in this case, and for the purpose of ascertaining the intentions of the plaintiff and defendants, the jury may take into consideration and have regard to the terms of the contract of sale of the meat mentioned in the evidence; the conduct of the plaintiff and defendants; the usages of trade, and the circumstances of the case."

Clearly this instruction should not have been given for several reasons. In the first place, it is meaningless; in the second place, it attempts to emphasize certain phases of the evidence to be considered by the jury; in the third place, it has no pertinency to the issues in the case.

Instruction Y offered by appellants was to the effect that if appellants had exercised reasonable care in the preparation of the food, they would not be liable. This instruction should not have been given because the exercise of reasonable care is not a defense to a suit for breach of warranty.

Instruction Z offered by appellants incorporated in substance the defense that appellants would not be liable if appellees had an equal opportunity to examine the food sold. Since the tainted condition of the meat was not discernible and since appellees relied on the seller's judgment, Instruction Z was not based on the evidence in the case.

The judgment is affirmed.