RED HILL HOSIERY MILL, INC., PLAINTIFF v. MAGNETEK, INC., AND LITHONIA LIGHTING, INC., A DIVISION OF NATIONAL SERVICES INDUSTRIES, INC., DEFENDANTS

No. COA02-998

(Filed 15 July 2003)

**1. Products Liability— breach of warranty—directed verdict—judgment notwithstanding the verdict**

The trial court did not err by failing to grant a directed verdict or judgment notwithstanding the verdict in a products liability case based on a breach of warranty arising out of a fire at plaintiff's hosiery mill allegedly caused by a lighting fixture supplied by defendants, because: (1) the evidence at trial showed that both the fire investigators and plaintiff's expert opined that the fire originated in the ballast of defendants' fixture even though defendants' expert denied the ballast was at fault; and (2) the factual disagreement warranted submission of the case to the jury without regard to the law of the case doctrine.

**2. Products Liability— breach of implied warranty—instruction**

The trial court did not err in a products liability case based on breach of an implied warranty under N.C.G.S. § 25-2-314 by refusing to give defendants' requested jury instruction that the jury had to find defendants' product was defective when it left defendants' control, because: (1) defendants' proposed instruction misstates the law and evidence in the case, and the trial court was under no duty to remedy the defects contained in the proposed instruction; (2) whether the fixtures met any governmental standards was never at issue in this case; and (3) it does not need to be decided whether the trial court's view that the issue of whether the product was defective at the time it left the control of defendants was implied in the pattern instruction since the essence of the defense was that the product was not defective at all.

### 3. Witnesses— expert—qualifications

The trial court did not err in a products liability case based on a breach of warranty by allowing over objection plaintiff's witness to testify as an expert in the fields of electrical engineering and fire cause and origin investigations, because: (1) given the witness's educational background and expertise, it cannot be concluded that the trial court abused its discretion by admitting his testimony; and (2) any deficiencies in the witness's qualifications or knowledge could be properly tested by cross-examination, presentation of evidence to the contrary, and appropriate jury instruction.

Appeal by defendants from judgment entered 6 December 2001 by Judge Richard L. Doughton in Catawba County Superior Court. Heard in the Court of Appeals 24 April 2003.

*Pinto Coates Kyre & Brown, PLLC, by Richard L. Pinto and David L. Brown, for plaintiff appellee.*

*Smith Moore LLP, by James G. Exum, Jr.; Trauger, Ney & Tuke by Kathryn A. Stephenson; and Sigmon, Clark, Mackie, Hutton & Hanvey, P.A., by J. Scott Hanvey, for defendant appellants.*

McCULLOUGH, Judge.

This case stems from a fire at plaintiff's hosiery mill on 13 March 1996. Plaintiff alleged that the fire was caused by a lighting fixture supplied by defendants. Defendants appeal from a jury verdict entered in favor of plaintiff at the 6 December 2001 Civil Term of Catawba County Superior Court. The procedural history of this case is as follows: Plaintiff filed suit on 31 December 1996, alleging two theories of liability: negligence and breach of warranty. On 12 January 1999, the superior court granted summary judgment on all grounds in favor of defendants and dismissed the suit. Plaintiff appealed to this Court. That appeal was heard on 22 February 2000 and resulted in this Court sustaining the granting of summary judgment on the negligence theory but remanded the case for trial on the breach of warranty issue. *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 530 S.E.2d 321, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 112 (2000) (*Red Hill I*). The subsequent trial resulted in a verdict of $4,000,000 in favor of plaintiff from which defendants now appeal.

The forecast of evidence set out in *Red Hill I* proved accurate, and essentially the same evidence was introduced at the trial of the

RED HILL HOSIERY MILL, INC. v. MAGNETEK, INC.

[159 N.C. App. 135 (2003)]

case and is summarized in our prior opinion. The evidence tended to show that in the early morning hours of 13 March 1996, a fire swept through plaintiff's hosiery mill located in Hickory, North Carolina. The mill was lighted by fixtures approximately 8 feet from the floor, which were appropriate for use in a mill, and were suspended by chains from the ceiling. As plaintiff manufactured socks made from lightly packed cotton, lint and dust were present in the mill. Testimony established that the building had a ventilation system that blew air across the upper regions of the building and that an employee vacuumed the lint from the top of the fixtures every three days.

Following the suppression of the fire, Hickory Fire Marshal, Tommy Richard Bradshaw (Bradshaw), began his investigation into the cause and origin of the fire. He interviewed the employees who first noticed the fire, the first fireman on the scene, and the responding firemen. Two agents of the North Carolina State Bureau of Investigation (SBI), Ernest Bueker and Jeffrey Sellers, conducted an independent investigation into the cause and origin of the fire. The Hickory Fire Inspector also inspected the premises. (These individuals are herein collectively referred to as "the investigators.")

The investigators noted that damage was concentrated in the south building, with the west end sustaining the heaviest damage. Damage was most significant overhead with only sporadic damage at floor level. Smaller fires at the ground level were found to have been started by falling debris. The investigators found a horizontal v-pattern starting in the northwest corner and moving across the ceiling. This pattern established to their satisfaction that the fire started above the ground level.

By interpreting this fire pattern, the investigators concluded that the fire originated within one of the fluorescent light fixtures which had sustained more damage than those adjacent to it. While the cover had been knocked off (probably by the firefighters), the fixture was significantly discolored and displayed extensive oxidation indicative of exposure to high heat. This fixture was in the immediate vicinity of the v-pattern described above. After excluding all possible sources of the fire, including the plant's electrical system or equipment as well as any fault in the fixture or its power cord, the investigators concluded that the fire was caused by the ignition of lint following the overheating of the ballast within the fixture. The ballast is a black metal box containing electrical components, a thermal protector, and potting compound, an asphalt-like substance that holds the compo-

nents in place and dissipates the heat generated by the operation of the light fixture.

After Bradshaw made this determination, he released the fire scene to plaintiff for the beginning of clean-up operations. The suspect fixture was preserved and the scene was extensively photographed.

Approximately one week after the fire, plaintiff's expert, Dr. James McKnight reviewed the fire scene and the suspect fixture. The adjacent fixtures were discarded during clean-up. Dr. McKnight concluded that the ballast had overheated due to a malfunction within the ballast. His conclusion was based on the fact that the fixture displayed a specific area of heat intensity and over half of the potting compound had seeped out due to overheating. Dr. McKnight considered other possible sources for the fire but concluded that none were reasonable. Dr. McKnight wished to perform certain tests to see if he could determine the precise defect within the ballast but did not do so in order to preserve the ballast in its current condition for the manufacturer's expert.

Appellant MagneTek's expert, David Powell (Powell), disassembled the ballast to determine if it failed prior to the fire. Powell testified there was no damage to the ballast's interior. The thermal protector was tested and failed to perform within its specifications, but not at a heat hazardous to lint. At trial Powell disputed the investigator's fire pattern analysis and stated he believed the v-pattern was from an external heat source. Powell was unable to point to an alternate source for the fire, and concluded only that the ballast was not at fault.

Dr. McKnight observed Powell's examination of the ballast and testified that he did not observe evidence of arcing on the exterior, but did state that the ballast failure may have occurred in such a way that the temperature increased in part of the ballast rapidly enough to ignite the lint on top of the fixture before the thermal protector operated.

The ballast was manufactured by MagneTek and sold to Lithonia for incorporation into lighting fixtures made by Lithonia. MagneTek tested the ballast and represented that it met Underwriters Laboratories' standards.

On appeal, defendants argue the trial court erred by (I) denying their motions for directed verdict and judgment notwithstanding the

RED HILL HOSIERY MILL, INC. v. MAGNETEK, INC.

[159 N.C. App. 135 (2003)]

verdict (JNOV); (II) refusing to give a jury instruction requested by them and failing to instruct that the jury had to find defendants' product was defective when it left defendants' control; and (III) in admitting over objection the testimony of plaintiff's expert, Dr. McKnight.

## I. Motion for New Trial and Judgment Notwithstanding the Verdict

[1] By their first assignment of error, defendants maintain that the trial court erred by failing to grant a directed verdict or JNOV in their favor after plaintiff presented its case and following the verdict. We do not agree.

The purpose of a motion for a directed verdict or JNOV is to test the legal sufficiency of the evidence. *Allison v. Food Lion, Inc.*, 84 N.C. App. 251, 253, 352 S.E.2d 256, 257 (1987). In considering such a motion, the trial court is required to take the plaintiff's evidence as true, consider all evidence in the light most favorable to the plaintiff, and give the plaintiff the benefit of all reasonable inferences, resolving all contradictions in the plaintiff's favor. *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. review denied*, 327 N.C. 140, 394 S.E.2d 177 (1990).

Plaintiff notes that the *Red Hill I* Court remanded this case for trial and found that the forecast of evidence warranted its submission to the jury. Plaintiff maintains this is the law of the case. *Sloan v. Miller Bldg. Corp.*, 128 N.C. App. 37, 41, 493 S.E.2d 460, 463 (1997). The plaintiff further argues that the evidence at trial was not materially different from *Red Hill I*; thus denial of defendants' motions was proper. *Id.*

Subsequent to *Red Hill I*, our Supreme Court had occasion to determine when a products liability case (such as the case at bar) can be proven by circumstantial evidence. In the case of *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 565 S.E.2d 140 (2002), the Supreme Court stated:

Accordingly, the burden sufficient to raise a genuine issue of material fact in such a case may be met if the plaintiff produces adequate circumstantial evidence of a defect. This evidence may include such factors as: (1) the malfunction of the product; (2) expert testimony as to a possible cause or causes; (3) how soon the malfunction occurred after the plaintiff first obtained the

product and other relevant history of the product, such as its age and prior usage by plaintiff and others, including evidence of misuse, abuse, or similar relevant treatment before it reached the defendant; (4) similar incidents, " 'when[] accompanied by proof of substantially similar circumstances and reasonable proximity in time,' " (5) elimination of other possible causes of the accident; and (6) proof tending to establish that such an accident would not occur absent a manufacturing defect. When a plaintiff seeks to establish a case involving breach of a warranty by means of circumstantial evidence, the trial judge is to consider these factors initially and determine whether, as a matter of law, they are sufficient to support a finding of a breach of warranty. The plaintiff does not have to satisfy all these factors to create a circumstantial case, and if the trial court determines that the case may be submitted to the jury, " '[i]n most cases, the weighing of these factors should be left to the finder of fact[.]' "

*Id.* at 689-90, 565 S.E.2d at 151 (citations omitted). We believe the evidence in the case *sub judice* is adequate to meet the *Dewitt* test, and therefore conclude that the trial court did not err in submitting the case to the jury.

The evidence at trial showed that both the fire investigators and plaintiff's expert opined that the fire originated in the ballast of defendants' fixture, even though defendants' expert denied the ballast was at fault. This sharp factual disagreement warranted submission of the case to the jury, without regard to the law of the case doctrine. Defendants' first assignment of error is overruled.

## II. Jury Instruction

[2] By their second assignment of error, defendants contend the trial court erred in its instructions to the jury. Again, we disagree.

A product liability claim based on breach of an implied warranty imposed pursuant to N.C. Gen. Stat. § 25-2-314 (Implied Warranty, Merchantability) was fully explained in *Red Hill I*:

A products liability claim grounded in *warranty* requires the plaintiff prove (1) the defendant warranted the product (express or implied) to plaintiff, (2) there was a breach of that warranty in that the product was defective at the time it left the control of the defendant, and (3) the defect proximately caused plaintiff damage. 1 *Products Liability* § 2.7, at 32-33; *Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 301, 354 S.E.2d 495, 497 (1987).

**RED HILL HOSIERY MILL, INC. v. MAGNETEK, INC.**

[159 N.C. App. 135 (2003)]

Thus, a products liability claim based on breach of warranty is not dependent upon a showing of negligence.

*Red Hill I*, 138 N.C. App. at 75, 530 S.E.2d at 326.

Defendants first argue that the trial court erred in instructing the jury in accordance with 1 N.C.P.I.—Civil 741.15. In its charge to the jury, the trial court stated:

> The first issue reads: Did the defendants, Magnetek or Lithonia, breach the implied warranty of merchantability made to the plaintiff?

> On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove *by the greater weight of the evidence* that one of the defendants breached the implied warranty of merchantability made to the plaintiff. A breach of the implied warranty of merchantability occurs if the fluorescent light fixture is not fit for the ordinary purposes for which such merchandise is used.

(Emphasis added.) Defendants also contend the trial court should have given its requested instruction, which read as follows:

> In order to recover for a breach of warranty, the Plaintiff must prove by a preponderance of the evidence that the defect complained of existed at the time of the sale of the ballast by MagneTek. In determining this issue, you may consider the age of the ballast at the time of the fire. You may also consider whether the manufacturer complied with government standards. Speculative allegations of a defect are not sufficient to meet the burden of proof of showing a defect at the time of sale.

Defendants' proposed instruction misstates the law and evidence in the case. The trial court was under no duty to remedy the defects contained in defendants' proposed instruction. *King v. Higgins*, 272 N.C. 267, 270, 158 S.E.2d 67, 69 (1967). The burden on the plaintiff is "the greater weight of the evidence" as previously noted in the pattern instruction. Further, whether the fixture met any governmental standards was never at issue in this case. In any event, compliance with governmental standards is not determinative of whether the product is defective. *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 17, 423 S.E.2d 444, 452 (1992).

The trial court felt that the issue of whether the product was defective at the time it left the control of defendants was implied in

the pattern instruction. However, we need not decide whether this view is correct, as we note that the essence of the defense was that the product was not defective at all. Powell did not testify that the product became defective after the point of sale due to abuse, lack of maintenance or some other reason. Instead, defendants contended that the product *was not* defective at all and that plaintiff's expert and the investigators had misidentified the source and origin of the fire.

As this issue focuses on an alleged error that is harmless under the facts before us, this assignment of error is overruled.

### III. Dr. McKnight's Testimony

[3] In their final assignment of error, defendants argue the trial court erred in allowing Dr. McKnight to testify over their objection, as an expert in the fields of electrical engineering and fire cause and origin investigations. We disagree.

Rule 702(a) of the North Carolina Rules of Evidence governs the admissibility of expert opinion and provides:

(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

The standards required by this Rule, expounded on in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469 (1993) and the North Carolina courts, *see, e.g., State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995), require the trial court to act as a "gatekeeper" and ensure that an expert's testimony is both relevant and reliable. In performing this function, the trial court is accorded substantial latitude, *Wiles v. N.C. Farm Bureau Mut. Ins. Co.*, 85 N.C. App. 162, 354 S.E.2d 248, *disc. review denied*, 320 N.C. 517, 358 S.E.2d 533 (1987), and its determination will be sustained absent an abuse of discretion. *State v. Holland*, 150 N.C. App. 457, 566 S.E.2d 90 (2002), *cert. denied*, 356 N.C. 685 (2003).

Here, Dr. McKnight testified that he has a Bachelor's and Master's Degree in Electrical Engineering and a Doctorate in Physics from Duke University. He has over 23 years' experience in the field of fire cause and origin investigation and has examined lighting fixture ballasts in the past. He has also been recognized as an expert by the courts on other occasions.

Given his educational background and expertise, we cannot conclude that the trial court abused its discretion in admitting his testimony. We believe the trial court properly exercised its "gatekeeping" function and that any deficiencies in Dr. McKnight's qualifications or knowledge could be properly tested by cross-examination, presentation of evidence to the contrary, and appropriate jury instruction. *See Powell v. Parker*, 62 N.C. App. 465, 303 S.E.2d 225, *disc. review denied*, 309 N.C. 322, 307 S.E.2d 166 (1983). Upon careful review of the record, transcript, and arguments presented by the parties, defendants' final assignment of error is overruled.

For the foregoing reasons, we believe the trial of this case was properly conducted and was free from reversible error.

No error.

Judges McGEE and LEVINSON concur.