WILLIAMS v. O'CHARLEY'S INC.

[221 N.C. App. 390 (2012)]

━━━━━━━

MICHAEL RAY WILLIAMS, Plaintiff v. O'CHARLEY'S, INC., Defendant

No. COA11-1467

(Filed 19 June 2012)

**1. Warranties—breach of implied warranty of merchantability —circumstantial evidence of food poisoning**

The trial court did not err in a negligence case by concluding that plaintiff presented sufficient circumstantial evidence of a defect in the food to warrant the submission of the issue of breach of an implied warranty of merchantability to the jury.

WILLIAMS v. O'CHARLEY'S INC.

[221 N.C. App. 390 (2012)]

**2. Negligence—motion for judgment notwithstanding verdict—proximate cause**

The trial court did not err in a negligence case by denying defendant's motion for judgment notwithstanding the verdict. Plaintiff presented sufficient evidence of proximate cause.

**3. Negligence—motion for judgment notwithstanding verdict—medical causation**

The trial court did not err in a negligence case by denying defendant's motion for judgment notwithstanding the verdict. Plaintiff presented competent medical causation evidence.

Appeal by defendant from judgment entered 3 January 2011 by Judge Shannon R. Joseph in Rowan County Superior Court. Heard in the Court of Appeals 2 April 2012.

*Doran, Shelby, Pethel and Hudson, P.A. by Kathryn C. Setzer for plaintiff-appellee.*

*Teague Campbell Dennis & Gorham, LLP by Christopher G. Lewis for defendant-appellant.*

STEELMAN, Judge.

Plaintiff presented sufficient circumstantial evidence of a defect in the food to warrant the submission of an issue of breach of an implied warranty of merchantability to the jury. Plaintiff presented sufficient evidence of proximate cause and medical causation. The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict.

## I. Factual and Procedural History

Michael Williams (plaintiff) ate dinner at an O'Charley's restaurant (defendant) in Concord on 18 March 2008. At about 8:15 p.m., plaintiff ordered grilled chicken, rice, and a baked potato. The food arrived about 45 minutes later. The chicken had a bad aftertaste, stuck to the plate, and was dry. No other member of plaintiff's dining party ate chicken. By 8 a.m. the next morning, plaintiff was suffering from severe diarrhea and vomiting. Plaintiff did not eat any other food on 18 March 2008. He was admitted to Rowan Regional Medical Center on 21 March 2008. Plaintiff was hospitalized for seven days under the treatment of Dr. Christopher McIltrot.

**WILLIAMS v. O'CHARLEY'S INC.**

[221 N.C. App. 390 (2012)]

Plaintiff brought this action seeking monetary damages for negligence and breach of an implied warranty of merchantability on 22 July 2009. A jury returned a verdict in favor of defendant on the negligence claim, but in favor of plaintiff on the claim for breach of an implied warranty of merchantability, and awarded $140,000 in damages for personal injuries. On 3 January 2011, the trial court entered judgment based upon the jury verdict. Defendant filed a motion for judgment notwithstanding the verdict on 13 January 2011. This motion was denied on 9 June 2011.

Defendant appeals.

## II.  Motion for Judgment Notwithstanding the Verdict

Defendant contends that the trial court erred in denying its motion for judgment notwithstanding the verdict. We disagree.

## A.  Standard of Review

"A motion for judgment notwithstanding the verdict presents the question of whether the evidence was sufficient to entitle the plaintiff to have a jury pass on it." *Morrison v. Kiwanis Club*, 52 N.C. App. 454, 462, 279 S.E.2d 96, 101 (1981). "The question of sufficiency of the evidence to send a case to the jury is a question of law. The question presented to the appellate court in reviewing the decision of the trial court is the identical question which was presented to the trial court by defendant's motion[.]" *Hunt v. Montgomery Ward* and Co., 49 N.C. App. 642, 644, 272 S.E.2d 357, 359-60 (1980) (internal quotation marks omitted).

The question is "whether the evidence, when considered in the light most favorable to plaintiff, was sufficient for submission to the jury." *Hunt*, 49 N.C. App. at 644, 272 S.E.2d at 360. The plaintiff "is entitled to the benefit of every reasonable inference which may legitimately be drawn from the evidence," and all conflicts in the evidence are resolved in favor of the plaintiff. *Morrison*, 52 N.C. App. at 462, 279 S.E.2d at 101.

## B.  Analysis

"[A] warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1) (2011). To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used[.]" N.C. Gen. Stat. § 25-2-314(2)(c) (2011).

To prove a breach of implied warranty of merchantability, a plaintiff must show (1) that the goods in question were subject to an implied warranty of merchantability; (2) that the goods were defective at the time of the sale and as such did not comply with the warranty; (3) that the resulting injury was due to the defective nature of the goods; and (4) that damages were suffered. *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 10, 423 S.E.2d 444, 447-48 (1992).

### i. Defect

**[1]** Defendant contends that plaintiff failed to present adequate evidence of the existence of a defect in the chicken.

A plaintiff need not prove a specific defect to carry his or her burden of proof in a products liability action based upon a breach of implied warranty of merchantability. *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 689-90, 565 S.E.2d 140, 151 (2002). In considering a motion for judgment notwithstanding the verdict, the evidence is adequate to submit the case to the jury where "the plaintiff produces adequate circumstantial evidence of a defect." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 159 N.C. App. 135, 139, 582 S.E.2d 632, 635 (2003).

> This evidence may include such factors as: (1) the malfunction of the product; (2) expert testimony as to a possible cause or causes; (3) how soon the malfunction occurred after the plaintiff first obtained the product and other relevant history of the product, such as its age and prior usage by plaintiff and others, including evidence of misuse, abuse, or similar relevant treatment before it reached the defendant; (4) similar incidents, when[] accompanied by proof of substantially similar circumstances and reasonable proximity in time; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that such an accident would not occur absent a manufacturing defect.

*DeWitt*, 355 N.C. at 689-90, 565 S.E.2d at 151 (internal quotation marks and citations omitted) (alteration in original).

Because of the dearth of North Carolina cases concerning food poisoning and the implied warranty of merchantability, we examine precedent from other jurisdictions. *See generally* Jane Massey Draper, Annotation, *Liability for injury or death allegedly caused by spoilage, contamination, or other deleterious condition of food or food product*, 2 A.L.R. 5th 1 (1992).

**WILLIAMS v. O'CHARLEY'S INC.**

[221 N.C. App. 390 (2012)]

In *Sneed v. Beaverson*, 395 P.2d 414, 415 (Okla. 1964), the plaintiff testified that she ate a steak at the defendant's grill, became ill, and was in the hospital for two days. Her doctor testified that "assuming the correctness of the [plaintiff's] history," it was his opinion, with reasonable certainty, that her injury came from the meat she ate. *Id.* The Supreme Court of Oklahoma held that this evidence was sufficient to survive a demurrer. *Sneed*, 395 P.2d at 416.

In *Snead v. Waite*, 208 S.W.2d 749, 750 (Ky. 1948), the plaintiff purchased barbecued mutton from the defendant and ate it with bread. By the next day, the plaintiff and his family were violently ill, suffering from nausea, vomiting, cramping, and diarrhea. *Id.* The Court of Appeals of Kentucky held that the evidence "amply proved all of the elements of an implied warranty[.]" *Snead*, 208 S.W.2d at 751.[1]

In *Johnson v. Kanavos*, 6 N.E.2d 434, 435 (Mass. 1937), the plaintiffs noticed a peculiar taste in the frankfurter sandwiches they purchased from the defendant. All of the plaintiffs became sick within four hours. *Id.* Physicians who treated the plaintiffs did not testify that, in their opinion, the sandwiches caused the illnesses. *Johnson*, 6 N.E.2d at 436. The Supreme Judicial Court of Massachusetts held that the evidence was adequate to support a finding in favor of the plaintiffs. *Id.* "Evidence of the presence of a peculiar taste in food has some probative significance on the issue whether the food was unwholesome and the cause of a subsequent illness of a person eating it[.]" *Johnson*, 6 N.E.2d at 435.

In *Barringer v. Ocean S.S. Co.*, 134 N.E. 265, 266 (Mass. 1922), the plaintiff alleged that food served on the defendant's vessel caused the plaintiff to suffer vomiting and cramps. The plaintiff ate some cold meat that did not "taste very good" to him. *Barringer*, 134 N.E. at 265-66. The Supreme Judicial Court of Massachusetts held that the evidence "was very meager; but the credibility of the witnesses was for the trial judge, and if he believed them he could find that the plaintiff's case was proved." *Barringer*, 134 N.E. at 266.

We hold the legal reasoning of these cases to be persuasive.

In the instant case, plaintiff testified that the chicken had a bad aftertaste, stuck to the plate, and was dry as though it had been under a heat lamp. Plaintiff got sick within several hours after eating the chicken. Plaintiff did not eat any other food on 18 March 2008. Dr. McIltrot testified that the chicken was likely the cause of his symp-

---

1. Before 1976, the Court of Appeals was Kentucky's highest court.

**WILLIAMS v. O'CHARLEY'S INC.**

[221 N.C. App. 390 (2012)]

toms. Dr. McIltrot testified that he eliminated other possible causes of the injury by performing medical tests and procedures, including a laparoscopy.

Plaintiff suffered from no pre-existing conditions that would account for these symptoms. Plaintiff ate the chicken at approximately 9:00 p.m. on 18 March 2008, and ate nothing else that night. Plaintiff began suffering from severe vomiting and diarrhea at 8:00 a.m. the next day. Taking all of the evidence in the light most favorable to the plaintiff, sufficient circumstantial evidence was presented of a defect in the chicken to warrant submission of the case to the jury.

### ii. Proximate Cause

[2] Defendant next contends that plaintiff failed to provide adequate evidence that a defect was the proximate cause of plaintiff's injury.

"Issues of proximate cause and foreseeability, involving applications of standards of conduct, are ordinarily best left for resolution by a jury under appropriate instructions from the court." *Hastings v. Seegars Fence Co.*, 128 N.C. App. 166, 170, 493 S.E.2d 782, 785 (1997).

In the instant case, the trial court instructed the jury on proximate cause, and defendant does not challenge these instructions. Further, plaintiff had not eaten anything else that day, other than his meal at defendant's establishment. Plaintiff's daughter did not eat any chicken, and she did not become ill. Plaintiff did not eat anything after he went home after his meal. Plaintiff began suffering severe vomiting and diarrhea. Plaintiff had never experienced symptoms of vomiting and diarrhea like he experienced after his meal on 18 March 2008. Plaintiff's daughter drove him to the hospital, where he remained for a week.

Dr. McIltrot, plaintiff's treating physician, testified that plaintiff's condition could have been caused by food poisoning. Dr. McIltrot testified that, based on his "understanding to a reasonable degree of medical certainty[,]" it was more likely than not that defendant's food caused plaintiff's injuries. Dr. McIltrot formed this opinion after observing plaintiff, conducting tests and procedures, and ruling out other anatomic, physical, and medical causes.

The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict on the basis of lack of evidence of proximate cause.

### iii.  Competent Medical Causation Evidence

[3]  Defendant contends that plaintiff failed to provide "competent medical causation evidence[.]"

"In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (internal quotation marks omitted). "However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation." *Id.*

In *Holley*, the Supreme Court held that the evidence was insufficient to support the Industrial Commission's findings of fact where the doctor's opinion was based entirely on speculation. *Holley*, 357 N.C. at 234, 581 S.E.2d at 754. The doctor's testimony included the statements that the blood clots could have developed prior to the workplace accident, and "[i]t's just a galaxy of possibilities." *Holley*, 357 N.C. at 233, 581 S.E.2d at 753.

In *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 233, 538 S.E.2d 912, 916-17 (2000), the Supreme Court held that the evidence was insufficient to support the Industrial Commission's findings of fact where the doctor's opinion was based entirely on speculation, and the doctor's testimony constituted the sole evidence of causation. The doctor's testimony included the statements: "I must say that a lot of times I have no idea why someone has fibromyalgia. Far and away, fibromyalgia occurs more commonly for unknown reasons." *Young*, 353 N.C. at 231, 538 S.E.2d at 915.

Dr. McIltrot testified that plaintiff's condition could have been caused by food poisoning. Dr. McIltrot testified that, based on his "understanding to a reasonable degree of medical certainty[,]" it was more likely than not that defendant's food was the cause of plaintiff's injuries. Dr. McIltrot formed this opinion after observing plaintiff, conducting tests and procedures, and ruling out other anatomic, physical, and medical causes. The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict based upon the competency of plaintiff's medical causation evidence.

For the reasons stated above, we hold that the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict.

AFFIRMED.

Judges CALABRIA and BEASLEY concur.